IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SHAWN M. NEWCOMB,                          Case No. 3:09-cv-936-HU

        Petitioner,              FINDINGS AND RECOMMENDATION

    v.

BRIAN BELLEQUE,

        Respondent.


Anthony D. Bornstein
Federal Public Defender's Office
101 SW Main Street, Suite 1700
Portland, OR 97204

    Attorney for Petitioner

John R. Kroger
Attorney General
Kristen E. Boyd
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

    Attorneys for Respondent


HUBEL, Magistrate Judge


1 -- FINDINGS AND RECOMMENDATION

Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, his amended petition should be denied.

## BACKGROUND

On or about March 13, 1984, JoAnn Sherman, was found by police in a parking lot, nude from the waist down, with stab wounds to her neck and chest.  She died from her injuries en route to the hospital.  On July 9, 1984, petitioner pled guilty to one count of murder, admitting that he had intentionally stabbed Ms. Sherman after meeting her in a bar that same evening.  On July 20, 1984, petitioner was sentenced to life imprisonment.

On January 15, 2003, petitioner was released on parole.  Prior to his release, the Oregon Board of Parole and Post-Prison Supervision ("Board") issued its Order of Supervision Conditions, which included Special Condition 10:

> DISCLOSE TO THE PAROLE OFFICER THE IDENTITY OF ANYONE WITHIN WHOM YOU HAVE A DATING RELATIONSHIP AND COMPLY WITH ANY RESTRICTIONS ON DATING AS ORDERED BY THE PAROLE OFFICER.

Resp. Exh. 111 at 88.

## I.  Revocation of Parole.

On June 24, 2003, the Board issued a warrant for petitioner's arrest for failing to notify his parole officer of a dating relationship.  Petitioner was arrested on June 27, 2003.  Resp. Exh. 111 at 92.  On September 4 & 9, 2003, a violation hearing was

held before Hearings Officer Larry Monagon. Petitioner was represented at the hearing by Attorney Stephen A. Lipton. Id. at 92. Petitioner, Annie Ernst, and Parole Officer Rick Southern testified at the hearing; and polygraph evidence was admitted.

The Hearing Officer summarized the evidence presented at the hearing as follows:

> The parole officer testified that Annie Ernst told him that she had been dating Newcomb for about one month prior to his arrest on June 27, 2003. He states Ernst told him they had gone out window shopping, had gone out for dinner several times and on a number of occasions had stayed in his room or her room at their motel where they had consensual sex.
>
> Newcomb testified that he had a friendship with Annie Ernst . . . but not on an intimate level. * * * Newcomb stressed he never had sex with Annie . . . . Newcomb states he never went window shopping with Annie and only went to Fred Meyers one time with her to buy a pair of shoes. * * *
>
> Annie Ernst testified that she met Newcomb at the Shoreline apartments about three months prior to his arrest. Ernst states she never spent the night in Newcomb's room nor did Newcomb spend the night in her room. * * * Ernst stresses she never had sex with Newcomb . . . . Annie Ernst admits telling Newcomb's parole officer in a telephone conversation on July 11, 2003 of having sex with Newcomb four to six times. * * * However, Ernst now testified that the only reason she stated such was due to Parole Officer Southern threatened her with jail time on her Clackamas County probation cases if she would not tell the truth.
>
> * * * * *
>
> In regards to the statements in his full disclosure polygraph test, Newcomb stresses he did not make a statement about having a relationship with Annie. For the record, Newcomb states he actually stated he knew a woman named Annie, about 40 years old and he thought she

> was having a relationship with someone and he liked her.
> Newcomb further stated that if [he] had a relationship
> with Annie he would not tell his parole officer because
> it is non[e] of his fucking business even though it is
> his business.
>
>                              * * * * *
>
> The parole officer testified that Newcomb had been dating
> Gail Ferguson for about three months prior to his arrest.
> Their relationship involved having lunch together on
> numerous occasions, had taken walks together and on one
> afternoon they went window shopping together on NE 23rd.
> He states Gail Ferguson told him that they were to go to
> a movie together on the evening of his arrest.

Resp. Exh. 111 at 92-94.

Following the hearing, Attorney Lipton sent a FAX to the

hearings officer, arguing that no violation should be found because

"there is no definition of 'dating relationship,'" and petitioner

"was not clear as to the definition." Id. at 120-22. On October

10, 2003, the Hearings Officer recommended the revocation of

petitioner's parole on the basis that petitioner violated special

condition #10:

> Newcomb openly and freely made statements to Polygraph
> Examiner James Scharmota about two sexual encounters he
> has had since his release from prison.  Annie Ernst
> testified, Parole Officer Rich Sothern [sic] told her to
> tell the truth or she could be in violation of her
> probations and she admitted to having sex with Newcomb in
> her and his room at the Shoreline Motel.  Newcomb
> testified he sent a message to Annie Ernst asking her to
> testify at his hearing.  Even though she is not on his
> visiting list there appears to have been some
> communication between the two of them prior to the
> Morrissey Hearing.  Consequently, I find more
> truthfulness in their prior statements about having sex
> with each other prior to each of them being aware of the
> possible consequences of how such statements could impact

> Newcomb's freedom.  As a result I did not find much
> credability [sic] in their statements being made under
> oath about their sexual relationship as well as Newcomb's
> change of his admission to having sex with another adult
> female.  Thus, I am making a probable cause finding that
> Newcomb failed to notify his parole officer of having a
> dating relationship by having a sexual affair with Annie
> Ernst and another unknown adult female.

Id. at 95.  The Hearings Officer recommended a violation sanction of five years "in hopes such a sanction will hold Newcomb accountable for non-compliance while encouraging him to be more open about his past for his rehabilitation."  Id.

On October 28, 2003, the Board reviewed the recommendation, revoked petitioner's parole, and ordered a future disposition hearing.  Id. at 156-58 (BAF #19).  *Petitioner did not seek administrative or judicial review of the Board's final order of revocation.*  See Id. at 156 (advising petitioner of right to administrative and judicial review).

## II.  **Future Disposition Hearing**.

On February 18, 2004, the Board conducted a future disposition hearing.  Resp. Exh. 111 at 161-215.  At the conclusion of the hearing, the Board unanimously voted to deny petitioner re-release on parole, resulting in a true life sentence.  Id. at 213-17 (BAF #20).  With the assistance of counsel, petitioner filed an original and amended request for administrative review on April 7, 2004, and April 24, 2004.  Id. at 219-22 & 226-30.

On December 7, 2005, the Board issued Administrative Review Response #6.  Resp. Exh. 111 at 231-34.  The Board held that petitioner's April 24, 2004, amended administrative review request was untimely in its entirety.  Additionally, the Board concluded that petitioner's due process claim, contained in his April 7, 2004, administrative review request, was untimely because it had not been raised in a petition for judicial review from the order of revocation:

> [Y]ou allege that the board violated your right to due process under both the federal and state constitutions because it was never explained to you what a dating relationship meant.  This allegation addresses an action not taken by the board in BAF #20.  In BAF #20, the board determined the length of your sanction in light of the violation of your conditions of parole.  It did not address the circumstances surrounding the violation as that was addressed in the board's Order of Revocation dated October 28, 2003, and mailed to you on November 4, 2003.  *As a result, the board determines that your administrative review request dated April 7, 2004, as it relates to this allegation is untimely.*
>
> A request for administrative review is timely if the board physically receives the request on or before the 45th day after the mail date on the order for which review is sought; if the envelope containing the request has a cancelled United States Postal Service postage date that is on or before the 45th day after the mail date on the order at issue; or, in the case of [an] inmate and in the absence of a legible USPS cancellation stamp, the inmate signed and dated the request and deposited it in an institutional mailing system in compliance with all applicable Department of Corrections rules on or before the 45th day after the mailing date on the order.  OAR 255-080-0005(2).
>
> The board's *revocation* order was dated October 28, 2003, and mailed to you on November 4, 2003.  The 45th day after that date is December 9, 2003.  The board, however,

did not receive your request until April 8, 2004, your
request did not have a legible USPS cancellation stamp,
and you failed to sign and date the request and deposit
in the institutional mailing system in compliance with
all applicable Department of Corrections rules on or
before the 45th day after the mailing date of the order
at issue.   In the light of the foregoing, the board
determines that your administrative review request is
untimely as it relates to this allegation.

Since at least 2001, this board has consistently required
strict adherence to OAR 255-080-0005(2).    The board
applies this rule consistently for a number of reasons:
1) the board believes that it is appropriate, as a facet
of rehabilitation, to require that individuals within its
jurisdiction strictly adhere to all applicable laws, and
take ordinary care of their personal business; 2) it is
unfair to those inmates who comply with the rule to allow
others who do no comply to have access to the same
benefits; and 3) it is not appropriate for the board to
discriminate among those who do not file timely requests
by reviewing some and not others.   For these reasons, the
board denies review of this allegation.

Resp. Exh. 111 at 233.

The Board also rejected petitioner's claim that imposing a
true life sentence for a technical parole violation constitutes
cruel and unusual punishment:

Your crime of conviction involved your killing a 45-year-
old female, who left behind four children.  The victim
was found in a parking lot nude from the waist down,
gasping for air, spitting blood and jerking violently.
The victim's cause of death was stab wounds to the neck
and chest.  You met the victim in a tavern, and you later
had dinner with her at a restaurant where you both
remained until the bar closed.   You stated that the
victim took your money, and when you took it back from
her, she slapped you and kicked you in the groin.   You
recalled kicking her and hitting her in the chest several
times but did not remember having a knife in your hand.
* * * You admitted to a polygraph examiner that you
killed the victim of your crime in an effort to cover the
rape of her by you.  You also said that what you did

> sexually with women was none of your supervising
> officer's business.  This conduct not only violated your
> conditions of supervision, but was very similar to your
> conduct that resulted in the death of your victim.  For
> these reasons, and in the interest of public safety, the
> board felt that it was appropriate to deny your re-
> release onto parole supervision and require that you
> serve the remaining balance of your sentence as provided
> by law.

Id. at 233-34.

Petitioner sought judicial review of the Board's future disposition order. Resp. Exhs. 102 & 103; see also Resp. Exh. 106. Petitioner asserted that (1) under the law in effect on petitioner's crime commission date, the Board could not impose a true life sentence based upon a technical violation; (2) a true life sentence in this case constitutes cruel and unusual punishment; (3) the Board's imposition of a true life sentence based upon the violation of an undefined special condition of parole violates due process; and (4) the Board violated due process and the *Ex Post Facto* Clause by revoking petitioner's parole because his parole should have been discharged by operation of law. Resp. Exh. 112 at 2-3.

In response, the State argued that petitioner's vagueness challenge was not preserved for appeal because petitioner did not timely request administrative review from the order revoking his parole and, in any event, the condition is not unconstitutionally vague; and a life sentence is not cruel and unusual punishment given petitioner's crime and his failure to observe the conditions

of his parole.  Resp. Exh. 114.  The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.  <u>Newcomb v. Board of Parole and Post-Prison Supervision</u>, 225 Or. App. 691, 202 P.3d 289, <u>rev. denied</u>, 346 Or. 257 (2009).

In the instant proceeding, petitioner alleges that the Board (1) violated his right to due process by denying him re-release on parole based upon a violation of an impermissibly vague condition; and (2) violated his right to be free from cruel and unusual punishment by permanently denying him re-release on parole based upon a technical violation of a parole condition.

**<u>DISCUSSION</u>**

**I.  <u>Ground for Relief One - Due Process</u>.**

In his first ground for relief, petitioner alleges that he was denied due process when the Board denied him re-release on parole based on a violation of an impermissibly vague condition of parole. Respondent moves the court to deny habeas relief on the basis that this ground is procedurally defaulted and, in any event, lacks merit.  Respondent argues that petitioner's due process claim should have been raised in an administrative review request from the order of *revocation*, and by a petition for judicial review therefrom.  Because petitioner failed to do so, the ground is procedurally defaulted.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral

proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by *fairly presenting* his claim to the appropriate state courts at all appellate stages afforded under state law. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>Casey v. Moore</u>, 386 F.3d 896, 915-16 & n.18 (9th Cir. 2004).

Raising a claim "for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons" does not constitute a fair presentation. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (internal quotations omitted); <u>see also</u> <u>Casey</u>, 386 F.3d at 918 n. 18 (noting conversely that a claim *is* exhausted *if* the state appellate court expressly addresses the claim, whether or not it was fairly presented).

A.  <u>**Petitioner's Due Process Claim was not Fairly Presented**</u>.

Under Oregon law, a litigant may only challenge a final decision by the Board if he first exhausts his administrative remedies. O.R.S. § 144.335(1)(b). If the litigant fails to exhaust his administrative remedies as to the final order sought to be challenged on appeal, the Oregon Court of Appeals will not consider the issue(s). <u>Woolstrum v. Board of Parole</u>, 141 Or. App. 332, 337-38, 918 P.2d 112 (1996); <u>Eli v. Board of Parole</u>, 187 Or. App. 454, 458, 67 P.3d 982 (2003); <u>Toriano v. Board of Parole</u>, 144 Or. App. 325, 326, 925 P.2d 167 (1996).

10 -- FINDINGS AND RECOMMENDATION

Here, petitioner failed to raise his due process claim on administrative or judicial review from the Board's order of revocation, and the time for doing so has expired.  O.R.S. 144.335(4).  Raising the due process claim on appeal from the future disposition hearing was not a fair presentation because the only basis for considering the issue at that stage would have been for "plain error".  The presentation of an unpreserved claim for plain error review is not a fair presentation because it is only in *rare and exceptional* cases that an Oregon appellate court will notice an alleged error where no ruling has been sought below. State v. Gornick, 340 Or. 160, 166, 130 P.3d 780 (2006); see Moore v. Mills, 2010 WL 3656061 *3 (D. Or. May 21, 2010) (setting forth Oregon law on plain error, and concluding that presentation of an unpreserved claim as plain error is not a fair presentation); Zielinski v. Coursey, 2011 WL 130218 *3-*4 (D.Or. Jan. 14, 2011) (same).

In short, because petitioner presented his due process claim in a procedural context in which it would be considered only in rare and exceptional cases, the claim was not fairly presented. Castille, 489 U.S. at 351; Casey, 386 F.3d at 917-18; see also Singleton v. Belleque, 2007 WL 162514 *5 (D.Or. Jan. 17, 2007) (concluding that appeal from *future disposition* hearing challenging parole *revocation*, is not a fair presentation); Walker v. Belleque, 2009 WL 2523724 *9 (D.Or. Aug. 18, 2009) (concluding that claim not

exhausted before the Oregon Board of Parole was not fairly presented to the state appellate courts). Further, because the time for petitioner to exhaust his administrative remedies and seek judicial review therefrom has expired, petitioner's due process claim is procedurally defaulted.

In so holding, I reject petitioner's contention that his due process claim is not procedurally defaulted because the state court did not clearly and expressly invoke a state procedural bar. As stated above, a federal constitutional claim may be procedurally defaulted, despite the absence of an express invocation of a state procedural bar, if the claim was presented in a procedural context in which it would not be considered absent exceptional circumstances. Castille, 489 U.S. at 351; Casey, 386 F.3d at 918 n.23.

Hence, petitioner's due process claim is procedurally defaulted not by virtue of the state appellate courts' invocation of an independent and adequate state rule, but due to the fact that (1) petitioner failed to fairly present the claim on direct appeal; (2) the appellate court did not expressly address the claim; and (3) the time for fairly presenting the claim to the state courts has expired. See Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Casey, 386 F.3d at 918-21 & n.23; Ayala v. Mills, 2010 WL 3945220, *4 (D.Or. Oct. 5, 2010).

**B.    O.R.S. 144.335(1)(b) is an Independent and Adequate State Procedural Rule.**

Petitioner argues that O.A.R. 255-080-0005(2), the administrative rule requiring an inmate to request administrative review within 45 days of a final order, is inadequate to preclude habeas relief due to *one* of the Board's expressed reasons for invoking the rule. Petitioner faults the Board's logic in stating that strict adherence to the 45-day rule is "appropriate, as a facet of rehabilitation." See Supra at 7. However, a state procedural rule is "adequate," for purposes of preclusion, provided it is clear, consistently applied, and firmly established at the time of the petitioner's purported default. E.g. Greenway v. Schriro, 653 F.3d 790, 797-98 (9th Cir. 2011); Walker v. Martin, 131 S.Ct. 1120, 1127-28 (2011). Petitioner does not argue that O.A.R. 255-080-0005(2) is inadequate under this test. In any event, rehabilitation was but *one* of *three* reasons for the Board's strict adherence to the time limitation.

More importantly, it is O.R.S. 144.335(1)(b), requiring a litigant to first exhaust his administrative remedies before seeking judicial review, which precludes habeas review in this case. See Casey, 386 F.3d at 921 (noting that it is the same procedural bar that makes it impossible for a litigant to fairly present his claims to the state courts, which renders his federal claims defaulted).

Additionally, I find petitioner's assertion that habeas corpus relief should not be precluded based upon a state procedural rule which required petitioner to raise his due process claim before his "vagueness problem crystalize[d]" to be unconvincing. Petitioner's counsel raised the vagueness issue to Hearings Officer Monagon prior to the revocation of his parole, arguing that no violation should be found because "there is no definition of 'dating relationship,'" and petitioner "was not clear as to the definition." Id. at 120-22. Hence, I reject petitioner's assertion that his due process claim did not "crystalize" until after the time for seeking administrative and judicial review expired.

Finally, I reject petitioner's assertion that state remedies are ineffective under 28 U.S.C. § 2254(b)(1)(B)(ii) because an inmate must file an administrative review to the *Board* before seeking judicial review. The Honorable Owen M. Panner, recently rejected this same argument, noting that the state statutory requirement that a prisoner frame his issue for the Board's consideration does not compel the conclusion that Oregon lacks a state corrective process. Baker v. Nooth, 2010 WL 3893936 *3 (D.Or. Sept. 29, 2010). I agree with Judge Panner's analysis in that case.

For all of these reasons, I conclude that petitioner procedurally defaulted his due process claim by failing to fairly

present it to the Oregon courts. Accordingly, habeas relief is precluded absent a showing of cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; Sawyer v. Whitley, 505 U.S. 333, 338-39 (1992).

### C.    Neither Cause and Prejudice nor Actual Innocence Exist to Excuse Petitioner's Procedural Default.

In order to demonstrate "cause," petitioner must show that some external objective factor external to the defense impeded his efforts to raise the claim in state court. Coleman, 501 U.S. at 753; Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998). "Prejudice", in turn, is actual harm resulting from the alleged constitutional violation. Vickers, 144 F.3d at 617. In the extraordinary case, cause for procedural default may be established where a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 321 (1998); House v. Bell, 547 U.S. 518, 536-37 (2006).

Petitioner argues that cause exists for his failure to seek administrative and judicial review of the revocation of his parole because his due process claim did not arise until the conclusion of the future disposition hearing when the Board relied upon the existence of a "sexual relationship", rather than a "dating relationship", to conclude that petitioner should be denied re-release on parole. As noted above, the fallacy to this argument is

that petitioner raised a vagueness argument prior to the Board's final order of revocation. Accordingly, the argument does not constitute "cause" sufficient to excuse petitioner's procedural default.

The "miscarriage of justice" exception to procedural default is limited to habeas petitioners who can show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schlup, 513 U.S. at 327; House, 547 U.S. at 537. To demonstrate "actual innocence", a petitioner must demonstrate factual, as opposed to legal, innocence of the crimes of conviction, with new reliable evidence. Schlup, 513 U.S. at 324; House, 547 U.S. at 537; Bousley v. United States, 523 U.S. 614, 623 (1998).

Petitioner has offered no new and reliable evidence demonstrating that it is more likely than not that no reasonable juror would have found petitioner guilty of murder beyond a reasonable doubt. Instead, petitioner asserts that he is "actually innocent" of violating Special Condition #10 because the Board found that he had engaged in a sexual relationship, rather than a dating relationship. Assuming, without deciding, that "actual innocence" of a parole violation would satisfy the gate-keeping requirement of Schlup,[1] petitioner fails to satisfy this standard

_____

[1] See Prater v. Lampert, 2006 WL 240534 *6 (D.Or. Jan. 30, 2006), vacated on other
(continued...)

16 -- FINDINGS AND RECOMMENDATION

due to the fact that he has failed to present any new, reliable evidence that he was not in a dating relationship with Ms. Ernst.

    **D.**  **The Merits**.

In the alternative, and based upon an independent review of the record, I conclude that the state court's rejection of petitioner's due process claim is neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). The Supreme Court has held that due process bars enforcement of a statute which forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, or is so standardless that it authorizes or even encourages arbitrary and discriminatory enforcement. Holder v. Humanitarian Law Project, 130 S.Ct. 2705, 2718 (2010); Maynard v. Cartwright, 486 U.S. 356, 361 (1988); Kolender v. Lawson, 461 U.S. 352, 357 (1983). The sufficiency of the notice provided by a statute is examined in light of the conduct with which a defendant is charged. Holder, 130 S.Ct. at 2719; Maynard, 486 U.S. at 361.

"Dating relationship", as used in Special Condition 10 is sufficiently precise to give a person of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited;

[1](...continued)
grds., 250 Fed. Appx. 218 (9th Cir. Oct. 4, 2007); Muraco v. Jones, 2010 WL 893630 *4 (D.Idaho Mar. 9, 2010).

and prevents a parole officer from exercising arbitrary discretion. The condition clearly encompassed petitioner's month long relationship with Annie Ernst which, as found by the Hearings Officer, included dinners together, window shopping, and consensual sex. The Second Circuit's decision in <u>United States v. Reeves</u>, 591 F.3d 77, 81 (2nd Cir. 2010), does not dictate a contrary decision.

In <u>Reeves</u>, the Second Circuit held that a condition of supervised release requiring the defendant to notify his probation officer of a "significant romantic relationship" was unconstitutionally vague because "[w]hat makes a relationship 'romantic', let along 'significant' in its romantic depth, can be the subject of endless debate that varies across generations, regions, and genders." 591 F.3d at 81. The requirement that petitioner notify his parole officer of a "dating relationship," in contrast, is not subject to the same qualitative and subjective interpretation problems. Hence, the state courts' rejection of petitioner's due process claim is neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

## II.  <u>Ground for Relief Two - Cruel and Unusual Punishment</u>.

In petitioner's second ground for relief, petitioner alleges that the Board violated his right to be free from cruel and unusual punishment when it permanently denied re-release on parole based upon a technical parole violation. Respondent moves the court to

deny habeas relief on the basis that the state courts' rejection of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.  I agree.

"The Eighth Amendment, which forbids cruel and unusual punishment, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring); Graham v. Florida, 130 S.Ct. 2011, 2021-22 (2010).  However, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." Lockyer v. Andrade, 538 U.S. 63, 77 (2003); Rummel v. Estelle, 445 U.S. 263, 272 (1980).

As outlined above, petitioner is serving a life sentence for a murder he committed in 1984.  A mandatory life sentence, without the possibility of parole, is not grossly disproportionate to the crime of murder.  Harris v. Wright, 93 F.3d 581, 585 (9th Cir. 1996); United States v. LaFleur, 971 F.2d 200, 211 (9th Cir. 1991); see also Harmelin, 501 U.S. at 1009 (term of life imprisonment with no possibility of parole not disproportionate to first offense crime of possession of 672 grams of cocaine).

Petitioner's contention that his confinement is premised solely upon the technical violation of his parole, and that the gravity of his underlying conviction is not relevant to the Eighth Amendment proportionality analysis, fails to recognize that the

revocation of parole is regarded as the reinstatement of the sentence for his crime of commitment, not merely as punishment for the conduct leading to the revocation. See United States v. Brown, 59 F.3d 102, 104 (9th Cir. 1995); Moore v. Kane, 2007 WL 4940293 *6-*7 (C.D. Cal. Nov. 26, 2007); Morgan v. Coplan, 2003 WL 181803 *3 (D.N.H. Jan. 24, 2003). There is nothing about Oregon's parole matrix system which alters this basic principle. See Haskins v. Palmateer, 186 Or. App. 159, 63 P.3d 31 (2003) ("[p]arole is part of a convicted person's sentence served outside the prison walls").

In sum, the revocation of petitioner's parole and the imposition of a true life sentence is not grossly disproportionate to petitioner's crime of commitment and parole violation. The state courts' rejection of petitioner's Eighth Amendment claim, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

## CONCLUSION

Based on the foregoing, petitioner's amended petition for writ of habeas corpus (#33) should be DENIED, and this proceeding DISMISSED, with prejudice. If petitioner appeals from the denial of habeas relief, a certificate of appealability should issue as to whether petitioner procedurally defaulted his available state remedies, and whether his right to due process was violated by the revocation of his parole (ground for relief one).

///

20 -- FINDINGS AND RECOMMENDATION

## <u>SCHEDULING ORDER</u>

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due February 10, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due Februry 27, 2012.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 23rd day of January, 2012.

/s/ Dennis J. Hubel
_____
Dennis J. Hubel
United States Magistrate Judge